IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

SYNGENTA BIOTECHNOLOGY, INC., )
GARWOOD SEED CO., )
GOLDEN SEED COMPANY, L.L.C., and )
THORP SEED CO., )
　　　　　　　　　　　　　　　　　　 )　　Civil Action No. 07-00038-SLR
　　　　　　　　Plaintiffs, )
　　　　　　　　　　　　　　　　　　 )　　**Redacted Version -**
　　　　v. )　　**Publicly Filed**
　　　　　　　　　　　　　　　　　　 )
DEKALB GENETICS CORPORATION and )
MONSANTO COMPANY, )
　　　　　　　　　　　　　　　　　　 )
　　　　　　　　　　　　　　　　　　 )
　　　　　　　　Defendants. )
　　　　　　　　　　　　　　　　　　 )

## PLAINTIFFS' ANSWERING BRIEF
## OPPOSING DEFENDANTS' MOTION TO TRANSFER

Of counsel:
Michael J. Flibbert
Howard W. Levine
Sanya Sukduang
Jennifer A. Johnson
FINNEGAN, HENDERSON, FARABOW,
　　　GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C. 20001
(202) 408-4000

Attorneys for Plaintiffs

Dated: March 6, 2007

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
YOUNG CONAWAY STARGATT &
　　　TAYLOR, LLP
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19899-0391
(302) 571-6600
jshaw@ycst.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

INDEX OF EXHIBITS ..................................................................................................... iii-iv

I.    INTRODUCTION .................................................................................................... 1

II.   NATURE AND STAGE OF PROCEEDING ........................................................... 2

III.  SUMMARY OF ARGUMENT ................................................................................ 3

IV.   FACTUAL BACKGROUND ................................................................................... 4

    A.   Monsanto's Unsuccessful Previously Filed Patent Actions Against
        Syngenta Relating to GA21 Corn ................................................................... 4

        1.   This Court Has Been the Forum for All the GA21 Corn Patent and
            Antitrust Litigation Between Monsanto and Syngenta .............................. 4

        2.   This Court Granted Summary Judgment in Syngenta's Favor .................. 5

    B.   The Lundquist '798 Patent Raises Similar Issues to Those Already Raised
        Before this Court ........................................................................................... 6

    C.   The Missouri Court Denied Syngenta's Motion to Transfer Solely Because
        of the Purported Lack of Personal Jurisdiction in Delaware Over One of
        the Defendants—a Defendant that Monsanto Previously Sued in this Court ........ 9

V.    ARGUMENT ......................................................................................................... 11

    A.   The Interests of Justice Strongly Favor Denying Transfer ................................... 11

        1.   The First-Filed Rule Demonstrates that this Court Should Maintain
            Jurisdiction Over the GA21 Corn Litigation ............................................ 12

        2.   The Policies Underlying the First-Filed Rule Demonstrate that this Court
            Should Retain Jurisdiction Over the GA21 Litigation ............................... 14

        3.   At the Very Least, this Court Should Stay Action on the Transfer Motion
            Pending the Missouri Court's Determination of Personal Jurisdiction .... 17

    B.   The Convenience of the Parties Does Not Favor Transfer to Missouri ............... 18

    C.   This Court Should Deny Monsanto's Alternative Request for Dismissal of
        this Declaratory Judgment Action ................................................................. 21

VI.   CONCLUSION ..................................................................................................... 21

# TABLE OF AUTHORITIES

## FEDERAL CASES

**Page**

*CCA Global Partners, Inc. v. Yates Carpet, Inc.,*
   No. 4:06CV15JCH, 2006 WL 1045919 (E.D. Mo. Apr. 19, 2006) ................................... 18-19

*Corry v. CFM Majestic Inc.,*
   16 F. Supp. 2d 660 (E.D. Va. 1998) ...........................................................................,....10

*Enzo Biochem Inc. v. Calgene Inc.,*
   No. 93-110-JJF, 1993 U.S. Dist. LEXIS 19502 (D. Del. May 18, 1993)................................17

*Equal Employment Opportunity Commission v. University of Penn.,*
   850 F.2d 969 (3d Cir. 1988)........................................................................... 12, 14-15

*Filler v. Lernout,*
   No. Civ. 01-191-SLR, 2002 WL 227079 (D. Del. Feb. 8, 2002) ...........................................12

*Genentech, Inc. v. Eli Lilly & Co.,*
   998 F.2d 931 (Fed. Cir. 1993)................................................................. 13-14, 17

*Indianapolis Motor Speedway Corp. v. Polaris Industrial, Inc.,*
   No. IP99-1190-C-B/S, 2000 WL 777874 (S.D. Ind. June 15, 2000).......................................10

*Optical Recording Corp. v. Capitol-EMI Music, Inc.,*
   803 F. Supp. 971 (D. Del. 1992).............................................................. 11, 15-17

*Pennington Seed, Inc. v. Produce Exchange No. 299,*
   457 F.3d 1334 (Fed. Cir. 2006)..............................................................................11

*Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.,*
   No. 06-505-SLR, 2006 WL 3755452 (D. Del. Dec. 19, 2006).......................................... 18-19

*Sherwood Medical Co. v. IVAC Medical Sys., Inc.,*
   No. 96-305 MMS, 1996 U.S. Dist. LEXIS (D. Del. Nov. 25, 1996)................................ 19-20

*Thales Airborne Systems S.A. v. Universal Avionics System Corp.,*
   Civ. No. 05-853-SLR, 2006 U.S. Dist. LEXIS 41895 (D. Del. June 21, 2006) ................ 12-13

059155.1015

## INDEX OF EXHIBITS

| Exhibit No. | Appendix Pages | Description |
|---|---|---|
| 1 | B1 - B4 | Complaint from Monsanto Co. et al. v. Syngenta Seeds, Inc. et al. (D. Del. 04-CV-305) |
| 2 | B5 - B9 | Complaint from DeKalb Genetics Corp. v. Syngenta Seeds, Inc. et al. (N.D. Ill. 04C50323) |
| 3 | B10 - B11 | Order transferring action to District of Delaware from N.D. Illinois in DeKalb Genetics Corp. v. Syngenta Seeds, Inc. et al. (N.D. Ill. 04C50323) |
| 4 | B12 - B30 | Memorandum Opinion from Monsanto Co. et al. v. Syngenta Seeds, Inc. et al. (D. Del. 04-305-SLR) (Lead Case) |
| 5 | B31 - B57 | U.S. Patent No. 5,554,798 |
| 6 | B58 - B92 | U.S. Patent No. 6,013,863 |
| 7 | B93 - B117 | U.S. Patent No. 5,538,880 |
| 8 | B118 - B129 | Joint Claim Construction Submission from Monsanto Co. et al. v. Syngenta Seeds, Inc. et al. (D. Del. 04-305-SLR) (Lead Case) |
| 9 | B130 - B136 | Excerpts from Brief of Plaintiffs-Appellants from Monsanto et al. v. Syngenta Seeds, Inc. et al. (Fed. Cir. 06-1472) |
| 10 | B137 - B138 | Excerpts from docket sheet for Rhone-Poulenc v. Monsanto Co. et al. (M.D.N.C. 1:97-CV-1138) |
| 11 | B139 - B143 | Excerpts from Syngenta's Opening Claim Construction Brief Regarding the Lundquist and Shah Patents from Monsanto Co. et al. v. Syngenta Seeds, Inc. et al. (D. Del. 04-305-SLR) (Lead Case) |
| 12 | B144 - B155 | Excerpts from Pretrial Order from Monsanto Co. et al. v. Syngenta Seeds, Inc. et al. (D. Del. 04-305-SLR) (Lead Case) |
| 13 | B156 - B160 | Notice of Subpoena and Subpoena to Dr. Theodore Klein by Syngenta from Monsanto Co. et al. v. Syngenta Seeds, Inc. et al. (D. Del. 04-305-SLR) (Lead Case) |
| 14 | B161 - B163 | Subpoena to Dr. Theodore Klein by Monsanto from Monsanto Co. et al. v. Syngenta Seeds, Inc. et al. (D. Del. 04-305-SLR) (Lead Case) |
| 15 | B164 - B165 | May 10, 2006 Order granting defendants' motions for summary judgment from Monsanto Co. et al. v. Syngenta Seeds, Inc. et al. (D. Del. 04-305-SLR) (Lead Case) |
| 16 | B166 - B171 | Answer to First Amended Complaint from DeKalb Genetics Corp. v. Syngenta Seeds, Inc. et al. (E.D. Mo. 4:06-CV-1191) |
| 17 | B172 - B177 | Second Amended Complaint from Monsanto Co. et al. v. Syngenta Seeds, Inc. et al. (D. Del. 04-305-SLR) (Lead Case) |

| 18 | B178 - B181 | Excerpts from Plaintiffs' Answering Brief in Opposition to Syngenta's Motion for Summary Judgment of Non-Infringement of the Lundquist Patents from Monsanto Co. et al. v. Syngenta Seeds, Inc. et al. (D. Del. 04-305-SLR) (Lead Case) |
| --- | --- | --- |
| 19 | B182 - B183 | Excerpts from the deposition transcript of David A. Walters from Monsanto Co. et al. v. Syngenta Seeds, Inc. et al. (D. Del. 04-305-SLR) (Lead Case) |
| 20 | B184 - B186 | Excerpts from the deposition transcript of T. Michael Spencer from Monsanto Co. et al. v. Syngenta Seeds, Inc. et al. (D. Del. 04-305-SLR) (Lead Case) |
| 21 | B187 - B194 | Plaintiffs' List of Live Witnesses and Expert Statement from Monsanto Co. et al. v. Syngenta Seeds, Inc. et al. (D. Del. 04-305-SLR) (Lead Case) |
| 22 | B195 - B200 | Excerpts from docket sheet from Monsanto Co. et al. v. Syngenta Seeds, Inc. et al. (D. Del. 04-305-SLR) (Lead Case) |
| 23 | B201 - B203 | Excerpts from deposition transcript of John Finer from Monsanto Co. et al. v. Syngenta Seeds, Inc. et al. (D. Del. 04-305-SLR) (Lead Case) |
| 24 | B204 - B206 | Declaration of Joan E. Purk from DeKalb Genetics Corp. v. Syngenta Seeds, Inc. et al. (E.D. Mo. 4:06-CV-1191) |
| 25 | B207 - B229 | Answer and Counterclaims of Monsanto Company and Monsanto Technology LLC to Syngenta Seeds, Inc.'s Second Amended Antitrust Complaint from Monsanto Co. et al. v. Syngenta Seeds, Inc. et al. (D. Del. 04-305-SLR) (Lead Case) |
| 26 | B230 - B231 | Excerpts from the deposition transcript of Ronald Lundquist from Monsanto Co. et al. v. Syngenta Seeds, Inc. et al. (D. Del. 04-305-SLR) (Lead Case) |

## I.    INTRODUCTION

Defendants (collectively referred to as "Monsanto") argue that the "first to file rule" compels transfer of the instant case to Missouri where a "prior-filed patent infringement action" was brought by Monsanto. (D.I. 8 at 4.)[1] The Missouri action, however, is *not* the "first" action between the parties, but the *third* action in which Monsanto sued Plaintiffs (collectively referred to as "Syngenta") for patent infringement based on Syngenta's GA21 corn product.

Monsanto brought the *first* action *in this Court.* On May 12, 2004, Monsanto first alleged that Syngenta's GA21 corn product infringed U.S. Patent No. 4,940,835 ("the Shah patent"). (Exh. 1.) The second action between the parties was filed on July 27, 2004, by DeKalb (Monsanto's wholly owned subsidiary) in the Northern District of Illinois. There, DeKalb alleged that Syngenta's same GA21 corn product infringed U.S. Patent Nos. 5,538,880 ("the Lundquist '880 patent") and 6,013,863 ("the Lundquist '863 patent"). (Exh. 2.) Syngenta successfully moved to transfer the Lundquist action, the second-filed action, to this Court. (Exh. 3.) After consolidating the cases (under civil action number 04-305-SLR), this Court interpreted all the relevant claim terms, granted summary judgment of non-infringement in favor of Syngenta with respect to both Lundquist patents, and granted summary judgment that the asserted claims of the Shah patent were invalid. (Exh. 4.)

Now, after having lost on every issue in this Court, Monsanto has commenced a *third* action in Missouri based on a closely related Lundquist patent, U.S. Patent No. 5,554,798 ("the Lundquist '798 patent"). (D.I. 8:Exh. 1.) In Missouri, Monsanto raises the same allegedly

---

[1] Docket Item ("D.I.") 8 refers to the Memorandum in Support of Defendants DeKalb Genetics Corporation and Monsanto Company's Motion to Transfer, filed January 25, 2007. "D.I. 8:Exh. __" refers to the exhibits submitted with D.I. 8.

infringing activity by Syngenta, the sale of GA21 corn, that was previously at issue in this Court. (*Id.*) Further, the '798, '880, and '863 patents name the same inventors (Ronald Lundquist and David Walters), disclose essentially the same subject matter, and contain common claim terms that this Court previously interpreted in the context of the '880 and '863 patents. (*See* Exhs. 5-7.)

Monsanto clearly filed the third action in Missouri in a transparent effort to locate a more favorable forum in which to continue to pursue its infringement claims against Syngenta and avoid the Court that is familiar with this dispute, the patents, and the accused GA21 corn product. This Court should not countenance such forum shopping, particularly when it is designed to avoid decisions previously made by this Court. Moreover, Monsanto brought the Missouri action even though it lacked a reasonable basis to assert personal jurisdiction over the four Syngenta defendants who are plaintiffs in this action. (*See* D.I. 8:Exh. 11.) The transfer of these parties back to Missouri, where Monsanto could not have properly brought the principal suit against them, would be manifestly unfair and contrary to the interests of justice. Accordingly, the interests of justice strongly support having this Court maintain its jurisdiction over the GA21 corn patent litigation, and Syngenta respectfully requests that this Court deny Monsanto's motion to transfer.

## II.    NATURE AND STAGE OF PROCEEDING

Syngenta filed this patent action against Monsanto for a declaratory judgment that the Lundquist '798 patent is invalid under 35 U.S.C. §§ 102, 103, and 112, and not infringed by Syngenta's GA21 corn product. (D.I. 1 at 8.) Instead of answering this complaint, Monsanto filed the instant motion to transfer the action to Missouri (D.I. 8), even though this Court has presided over the GA21 actions between the parties for the last two-and-a-half years. (*See* § IV.A, *infra*.) There has not yet been a scheduling conference in this case.

III.    SUMMARY OF ARGUMENT

1.      Monsanto brought the first case involving Syngenta's GA21 corn product in this Court, the second case in Illinois, and the third case in Missouri. Monsanto's choice of forum has been dictated by its desire to escape unfavorable rulings in this Court or capitalize on perceived victories in the Illinois court. In contrast, after Monsanto initially sued Syngenta in this Court, Syngenta's consistent goal has been to have a single court—this Court—manage the GA21 litigation.

2.      Monsanto's instant motion to transfer should be seen for what it truly is—an example of forum shopping that should not be accepted. This Court has: (1) managed the prior GA21 patent litigation for two-and-a-half years, (2) reviewed the prosecution history of the Lundquist patents in connection with its non-infringement decision, (3) heard oral argument on claim construction and summary judgment issues, (4) construed the claims of the related Lundquist '880 and '863 patents, including claim terms specifically found in the claims of the Lundquist '798 patent here in suit, and (5) decided summary judgment motions on substantive issues in the case. Accordingly, the interests of justice, including the first-filed rule, and the policies underlying that rule, plainly favor this Court maintaining jurisdiction over the GA21 litigation.

3.      These considerations are particularly strong where the Missouri court lacks personal jurisdiction over the named plaintiffs in this action. At the very least, this Court should allow the Missouri court to determine the personal jurisdiction and transfer issues raised by Syngenta in Missouri before deciding whether to transfer the instant case.

4.      The convenience of the parties and witnesses also does not favor transferring this action to a forum that lacks personal jurisdiction over the named plaintiffs. Monsanto has failed to explain why after first suing Syngenta in Delaware in 2004, and after litigating against

Syngenta in this Court for years, it is now all of a sudden inconvenient to litigate in Delaware. To the contrary, at least one third-party witness, Dr. Theodore Klein, who figures in Syngenta's invalidity case for the '798 patent, is subject to subpoena only in this jurisdiction, not in Missouri, indicating the convenience and importance of Delaware as the forum. Furthermore, the other relevant witnesses are not located in Missouri, and to the extent they are, Monsanto has failed to make any showing that such witnesses—their own employees—could not testify at trial in Delaware.

## IV.    FACTUAL BACKGROUND

### A.    Monsanto's Unsuccessful Previously Filed Patent Actions Against Syngenta Relating to GA21 Corn

#### 1.    This Court Has Been the Forum for All the GA21 Corn Patent and Antitrust Litigation Between Monsanto and Syngenta

This litigation involves Syngenta's genetically engineered corn product, known as GA21 corn. GA21 corn contains a gene, developed by Rhone-Poulenc Agro ("RPA"), which makes the corn resistant to the herbicide glyphosate. Within the past two-and-a-half years, Monsanto has sued Syngenta for patent infringement in *three different courts* on the basis of Syngenta's GA21 corn product.

Monsanto brought the first of these GA21 lawsuits in this Court on May 12, 2004, alleging that Syngenta's proposed GA21 corn product infringed the Shah patent. (Exh. 1.) Ignoring the pending suit in this Court, DeKalb (Monsanto's wholly owned subsidiary) sued Syngenta (using the same outside counsel) on July 27, 2004, in the Northern District of Illinois, alleging that the same GA21 corn product infringed the Lundquist '880 and '863 patents. (Exh. 2.) Given the closely related subject matter and patents, Syngenta moved to transfer the later-filed Illinois case to this Court. (Exh. 3.) The Illinois district court granted Syngenta's motion on May 19, 2005, and transferred the Lundquist action to Delaware. (*Id.*) The Illinois court

explained that the Lundquist and Shah patents raised similar issues and the alleged infringing activity (sales of GA21 corn) was the same in both actions. (*Id.*)

This Court consolidated the Shah action and the transferred Lundquist action with an antitrust action brought by Syngenta against Monsanto also relating to Syngenta's efforts to market GA21 corn products. *Syngenta Seeds, Inc. v. Monsanto Co.*, C.A. No. 04-CV-305 SLR (D. Del. filed July 28, 2004)("the antitrust action"). In that pending antitrust action, Syngenta contends, *inter alia*, that the Shah and Lundquist actions were objectively baseless. Monsanto has asserted state law counterclaims relating to Syngenta's GA21 corn products. All of these related GA21 corn cases have been handled by this Court.

### 2.    This Court Granted Summary Judgment in Syngenta's Favor

This Court granted summary judgment in the patent litigation in favor of Syngenta on May 10, 2006. (Exh. 4.) This Court held that Syngenta had not infringed the Lundquist '880 and '863 patents and that the asserted claims of the Shah patent were invalid. (*Id.*) In its decision, and after the parties submitted roughly 1000 pages of claim construction briefing, including exhibits and detailed claim charts (*see* Exh. 22 at D.I. 203-04, 215-16, 218, 275, 279, 309), and after a one-and-a-half hour oral argument, the Court adopted all but one of Syngenta's proposed claim constructions with respect to the Shah patent and all of Syngenta's claim constructions with respect to the Lundquist '880 and '863 patents. (Exh. 4 at 16-17 n.8; Exh. 8.)

Following Rule 54(b) certification, Monsanto appealed the adverse summary judgment decisions. *Monsanto Co. v. Syngenta Seeds, Inc.*, Appeal No. 06-1472 (Fed. Cir.). In its Federal Circuit appeal, Monsanto maintains that this Court's summary judgment rulings should be reversed, its claim constructions vacated, and that "the case should be remanded [to Delaware] for further proceedings." (Exh. 9 at 62.) The appeal remains pending, and this Court has stayed the related antitrust case pending the resolution of that appeal.

**B.    The Lundquist '798 Patent Raises Similar Issues to Those Already Raised Before this Court**

Having lost in Delaware, Monsanto sued Syngenta in the Eastern District of Missouri for allegedly infringing the Lundquist '798 patent, entitled "Fertile Glyphosate-Resistant Transgenic Corn Plants." (D.I. 8:Exh. 1.)  As admitted by Monsanto, "[t]he '798 patent is related to the '880 and '863 patents in the earlier case because the '798 patent has the same inventors and claims priority to the earliest application in the same chain as the '880 and '863 patents." (D.I. 8 at 2 n.1.)  In particular, the Lundquist '880, '863, and '798 patents all derive from the same parent patent application, Ser. No. 07/467,983, filed on January 22, 1990.  (Exhs. 5-7.)  The Lundquist '880, '863, and '798 patents share almost identical specifications, portions of the same prosecution history, and discuss the same experimental work.  (*Id.*)

Monsanto has acknowledged that the only reason it had not sued Syngenta earlier on the '798 patent is because of an inventorship dispute concerning that patent in the Middle District of North Carolina between Monsanto and RPA that had been pending for six years.  (D.I. 8 at 2.)  An advisory jury had held that RPA scientists should have been listed as inventors on the patent. (D.I. 8:Exh. 3 at 3-4.)  Six years later, on August 7, 2006, the North Carolina court decided not to adopt the advisory verdict and held that Lundquist and Walters were the sole inventors of the '798 patent.  (*Id.* at 1.)  This decision is not yet final.  (*See* Exh. 10.)  If not for the pendency of that dispute, the '798 patent would have already been before this Court in the prior action.

All the Lundquist patents, including the '798 patent, are based on the alleged discovery of a three-step method of transforming plants by (1) DNA bombardment, (2) selecting (or identifying) transformed cells, and (3) regenerating a transgenic plant ("R0") from the transformed cells.  (*See* Exhs. 5-7.)  For example, in Missouri, DeKalb sued Syngenta on claim 6

of the '798 patent (Exh. 5), which recites those very method steps as shown by the following

comparison to the '863 patent (Exh. 6) previously before this Court:

| Claim 1 of the '863 Patent | Claim 6 of the '798 Patent |
|---|---|
| A process for producing a fertile transgenic *Zea mays* [corn] plant comprising the steps of | The transgenic plant of claim 1 [glyphosate resistant] wherein the plant is obtainable by a process comprising the steps of: |
| (i) *bombarding* intact regenerable *Zea mays* cells with DNA-coated microprojectiles, wherein said DNA comprises at least a selectable marker gene; | (i) *bombarding* intact regenerable *Zea mays* cells with microprojectiles coated with said heterologous DNA construct; |
| (ii) *selecting* a population of transformed cells expressing the selectable marker gene; and | (ii) *identifying or selecting* a population of transformed cells; and |
| (iii) *regenerating* a fertile transgenic plant therefrom, wherein said DNA is expressed so as to impart glyphosate resistance to said transgenic plant and is transmitted through a normal sexual cycle of said transgenic plant to progeny plants. | (iii) *regenerating* a fertile transgenic plant therefrom. |

In other words, claim 6 of the '798 recites a glyphosate-resistant plant made by

microprojectile bombardment, and claim 1 of the '863 patent recites using microprojectile

bombardment to make a glyphosate-resistant plant. Regardless of the form of the claim (method

or product), the claim construction issues plainly overlap. Both claims require that the resulting

plant (called the R0 plant) be made from the bombardment process. (*Compare* Exh. 6 at claim 1

*with* Exh. 5 at claims 1, 6.) Further, the claims also use the term "progeny," which this Court has

interpreted as referring to the next generation ("R1") plant. (Exh. 4 at 16 n.8; Exh. 8 at 6-7.)[2]

---

[2] At footnote 2, Monsanto suggests that the claim constructions that were made by the North Carolina court in the inventorship trial are somehow binding on Syngenta, while this Court's own constructions should be ignored. (D.I. 8 at 3 n.2.) This argument is difficult to understand as Syngenta was not a party to the North Carolina litigation. In contrast, Syngenta and Monsanto were both parties in the prior suit in this Court involving GA21 corn where this Court addressed the same terms. Indeed, this Court's claim construction, in May 2006, was made several months before the North Carolina court's claim construction in August 2006. Furthermore, the decision of the North Carolina court is not yet final. (*See* Exh. 10.)

Syngenta's non-infringement position relies, in part, on such claim interpretations. This Court adopted Syngenta's interpretation that the plants made by the processes of claim 1 of the '880 and '863 patents are the R0 plant, and that the asserted claims covering the making of "progeny," should be interpreted as the R1, R2, or R3 generation. (Exh. 4 at 16 n.8; Exh. 8 at 3-4 and 6-7; Exh. 11 at 22-24.) Syngenta's accused plants, however, are not the R0-R3 generation. (Exh. 23 at 192.) Similarly, claims 1 and 6 of the '798 patent are directed to the R0 plant, and the asserted claims to progeny plants are directed to the R1 or R2 generation. Since Syngenta indisputably has not made, used, sold, offered to sell, or imported R1 or R2 GA21 corn products, it cannot infringe the asserted claims of the '798 patent.

Likewise, both the '798 and '863 claims require glyphosate "resistance." This Court has agreed with Syngenta that this phrase means that the corn "will not be significantly injured when glyphosate is applied to it." (Exh. 4 at 16 n.8; Exh. 8 at 7.) Syngenta previously contended in this Court that the Lundquist '863 patent does not enable those skilled in art to obtain glyphosate "resistance" in a corn plant as of January 1990 (the parent application's filing date). (See Exh. 12 at Exh. 5 ¶ 22.) Syngenta will again advance this argument with respect to the '798 patent. Thus, the interpretation of the claim term glyphosate "resistance"—a term already considered by this Court—will impact the invalidity of the '798 patent.

In the prior case, Syngenta also raised invalidity defenses with respect to the Lundquist patents based on prior art publications describing Dr. Theodore Klein's pioneering work in corn transformation. (Exh. 12 at Exh. 5 ¶¶ 16-17.) Syngenta expects to raise similar prior art challenges to the Lundquist '798 patent. Dr. Klein is employed by DuPont (a competitor of Syngenta), and resides in Wilmington, Delaware. (D.I. 8:Exh. 19 at 3-5.) Both parties subpoenaed Dr. Klein and deposed him in the prior case in this Court, and Syngenta identified

him as a likely trial witness. (Exhs. 13-14; D.I. 8:Exh. 15.) The issue of Dr. Klein's prior work was before this Court on DeKalb's motion for summary judgment of validity over the Klein work. (Exh. 12 at 5, ¶ 26.) This Court dismissed the motion as moot in light of its summary judgment decision, but the nature of Dr. Klein's work was discussed in detail in the briefs and was argued before this Court. (Exh. 22 at D.I. 199; Exh. 15 at 2 n.9.)

C.    **The Missouri Court Denied Syngenta's Motion to Transfer Solely Because of the Purported Lack of Personal Jurisdiction in Delaware Over One of the Defendants—a Defendant that Monsanto Previously Sued in this Court**

Based on all the above, Syngenta moved the Missouri Court, on October 20, 2006, to transfer the third-filed action to this Court because the interests of justice strongly favored having this Court continue to preside over the GA21 patent litigation. (D.I. 8:Exh. 7.) In addition to the relatedness of the actions, Syngenta moved to transfer because Missouri lacks personal jurisdiction over several of the defendants, who are the named plaintiffs in the declaratory judgment action in this Court, namely Syngenta Biotechnology, Inc., Garwood Seed Co., Golden Seed Company, L.L.C., and Thorp Seed Co. (D.I. 8:Exh. 9 at 15; Exh. 16 at ¶ 13.)

In response to the motion to transfer, Monsanto argued that the Missouri court lacked the power to transfer the case to Delaware because this Court lacked personal jurisdiction over JC Robinson, one of the parties in the Missouri action. (D.I. 8:Exh. 8 at 8-9.) Monsanto argued that § 1404 did not authorize the transfer because Monsanto could not have brought suit against JC Robinson in Delaware. (*Id.* at 8.) Syngenta found this argument surprising as *Monsanto had in fact previously sued JC Robinson in Delaware in connection with the GA21 litigation.* (Exh. 17 at 3, ¶¶ 10, 13.) Before the Illinois case was transferred to Delaware, Monsanto specifically sued JC Robinson on the Shah patent in Delaware, alleging that venue was proper in this Court.

(*Id.*)  Moreover, in the pre-trial order in this Court, Monsanto stipulated that venue over the defendants (including JC Robinson) was proper in Delaware. (Exh. 12 at 5 ¶ 2.)

Nevertheless, based solely on Monsanto's alleged inability to sue JC Robinson in this Court, the Missouri court denied Syngenta's motion to transfer on December 29, 2006. (D.I. 8:Exh. 10.)  Contrary to Monsanto's allegations that Syngenta is trying to circumvent the Missouri court's order denying transfer (D.I. 8 at 9), the Missouri court never actually considered whether the interests of justice favored transfer.

In light of the Missouri court's decision, Syngenta filed a motion in Missouri to sever Monsanto's claim of patent infringement against JC Robinson (a peripheral party) from those asserted against the remaining defendants. (D.I. 8:Exh. 12.) In its paper, Syngenta argued that severance of JC Robinson removes the impediment preventing the Missouri court from transferring the claims against the remaining defendants to Delaware and is a procedural mechanism used by many courts for this very purpose. *See Indianapolis Motor Speedway Corp. v. Polaris Indus., Inc.*, No. IP99-1190-C-B/S, 2000 WL 777874, at *2-3 (S.D. Ind. June 15, 2000); *Corry v. CFM Majestic Inc.*, 16 F. Supp. 2d 660, 665-66 (E.D. Va. 1998).[3] This motion is currently pending before the Missouri court.

At the same time as the filing of the severance motion, the Syngenta parties (the named plaintiffs here) filed a motion to dismiss Monsanto's complaint in Missouri for lack of personal jurisdiction. (D.I. 8:Exh. 11.) Monsanto's complaint in Missouri does not even purport to make

---

[3] Monsanto's labeling of Syngenta's motion to sever in Missouri as "a motion to reconsider" (*see* D.I. 8 at 9) is simply wrong. Syngenta is not asking the Missouri court to reconsider its determination that JC Robinson did have minimum contacts with Delaware, which was the sole basis of its denial of Syngenta's motion. Instead, Syngenta is asking the Missouri court to actually decide the merits of the transfer dispute, particularly whether the interests of justice warrant transfer to this Court.

a prima facie case of jurisdiction over these parties. (*See* Exh. 1.) In fact, it identifies *no factual basis* for personal jurisdiction in the State of Missouri over any of the Missouri Defendants. (*Id.*); *see Pennington Seed, Inc. v. Produce Exchange No. 299*, 457 F.3d 1334, 1343-44 (Fed. Cir. 2006)(holding that a patentee's complaint may be dismissed when "[o]n its face, the complaint lacks sufficient allegations of minimum contacts to establish personal jurisdiction"). At the same time, the named plaintiffs also filed the instant declaratory judgment action in this Court so that the dispute between them and Monsanto can be resolved in the proper forum. (D.I. 1.)[4]

## V.    ARGUMENT

### A.    The Interests of Justice Strongly Favor Denying Transfer

In assessing the merits of a motion to transfer, courts "focus on the convenience of the parties and witnesses and the interest of justice." *Optical Recording Corp. v. Capitol-EMI Music, Inc.*, 803 F. Supp. 971, 974 (D. Del. 1992). Here, each of these factors strongly demonstrates that Monsanto's motion should be denied. In particular, the interests of justice strongly weigh in favor of denying Monsanto's transfer motion. When there are related suits pending in different jurisdictions, the interests of justice are examined through the lens of the

---

[4] Monsanto has recently responded to Syngenta's motion to dismiss for personal jurisdiction in Missouri. In its response, Monsanto does not even attempt to establish that the named plaintiffs have minimum contacts with Missouri. Instead, Monsanto argues that the named plaintiffs have a "symbiotic relationship" with the other Syngenta defendants and that this relationship is sufficient to establish personal jurisdiction in Missouri. Monsanto's theory, however, ignores controlling Federal Circuit precedent requiring a party to have minimum contacts with the forum state. *See Pennington Seed*, 457 F.3d at 1343-44. And it is completely inconsistent with the basis for Monsanto's opposition to transfer to Delaware—and the Missouri court's denial of transfer—on the ground that JC Robinson, which has the same "symbiotic relationship" with the same Syngenta entities, did not possess minimum contacts with Delaware.

first-filed rule. Here both the rule and the policies underlying the rule warrant the denial of Monsanto's motion.

1.    **The First-Filed Rule Demonstrates that this Court Should Maintain Jurisdiction Over the GA21 Corn Litigation**

The first-filed rule serves the interests of justice by "encourage[ing] sound judicial administration and promot[ing] comity among federal courts of equal rank." *Equal Employment Opportunity Comm'n v. Univ. of Penn.*, 850 F.2d 969, 971 (3d Cir. 1988). Monsanto started this GA21 litigation in May 2004 by intentionally suing Syngenta in Delaware. And for the last two-and-a-half years, Syngenta has defended against this litigation and pursued its related antitrust case in this Court. (*See* § IV.A, *supra*.) Accordingly, as this Court was the first court to obtain jurisdiction over the parties' dispute involving the Lundquist patents and Syngenta's GA21 corn product, the first-filed rule warrants the denial of Monsanto's motion to transfer. *See Filler v. Lernout*, No. Civ. 01-191-SLR, 2002 WL 227079, at *2 (D. Del. Feb. 8, 2002)(applying first-filed rule where the related cases involved "the same set of facts, although not necessarily the same claims"). Monsanto's argument (raised in Missouri) that Delaware is "a distant location unconnected to any relevant activity" is absurd. (D.I. 8:Exh. 8 at 1.)

This Court's decision in *Thales Airborne Systems S.A. v. Universal Avionics Systems Corp.*, Civ. No. 05-853-SLR, 2006 U.S. Dist. LEXIS 41895, at *11-12 (D. Del. June 21, 2006) does not warrant a different outcome. In *Thales*, the two lawsuits in question (one in Delaware and one in New Jersey) were filed within an hour and fifteen minutes of each other. *Id.* at *1. The Delaware action involved U.S. Patent Nos. 5,488,563 ("the '563 patent), and 5,638,282 ("the '282 patent), and the New Jersey action involved these same two patents, plus two more: U.S. Patent Nos. 6,088,654 ("the '654 patent") and 5,414,631 ("the '631 patent"). *Id.* at *2.

This Court enjoined the prosecution of the New Jersey action on the patents that were in Delaware, the '563 and '282 patents, but allowed the New Jersey action concerning the '654 and '631 patents to go forward. *Id.* at \*12. The Court did so because the '654 and '631 patents were "different" from the Delaware patents in that they involved "different aspects of this broad category of technology." *Id.* at \*11. In fact, a review of the New Jersey patents (the '654 and '631 patents) illustrates that they had different specifications than the two patents that were at issue in Delaware (the '563 and '282 patents), had different inventors, different figures, and did not claim priority to a common application.

The facts here are clearly distinguishable from those in *Thales*. In the present case, the '863 patent (from the prior Delaware suit) and the '798 patent have the same inventors, share almost the same specification, have the same figures, have claims that involve similar issues of interpretation, are in the same patent family, and claim priority to the same application. The '863 patent claims a method of making a glyphosate-resistant plant using microprojectile bombardment (Exh. 6 at claim 1), while the '798 patent claims a glyphosate-resistant plant made by microprojectile bombardment (Exh. 5 at claim 6). Furthermore, in *Thales*, this Court had not invested significant time in either managing discovery or becoming familiar with the merits of the dispute. Here, of course, this Court has had over two-and-a-half years of experience in addressing the issues regarding GA21 corn. Accordingly, Syngenta submits that the prior action in this Court involving the alleged infringement of the '880 and '863 patents by Syngenta's GA21 corn should be considered the first-filed action, and the Court should deny Monsanto's motion to transfer.

2.    **The Policies Underlying the First-Filed Rule Demonstrate that this Court Should Retain Jurisdiction Over the GA21 Litigation**

Even assuming that this Court finds that the prior lawsuit in this Court involving GA21 corn is not technically the first-filed suit because the '798 patent was not previously at issue, it should still not transfer the instant action to Missouri. While the "general rule favors the forum of the first-filed action . . . [e]xceptions, however, are not rare, and are made when justice or expediency requires . . . ." *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993). "District courts have always had discretion to retain jurisdiction given appropriate circumstances justifying departure from the first-filed rule." *EEOC*, 850 F.2d at 972. Courts have consistently recognized that the first-filed rule "'is not a rigid or inflexible rule to be mechanically applied' . . . and forum shopping [has] *always* been regarded as proper bases for departing from the rule." *Id.* at 976 (citations omitted)(emphasis added). "The letter and spirit of the first-filed rule . . . are grounded on equitable principles." *Id.* at 977. In *EEOC*, cited by Monsanto (D.I. 8 at 8), the Third Circuit affirmed a decision of a district court not to apply the first-filed rule, where the party's "effort to evade a decision in this Circuit violates the equitable basis for the rule, and creates several problems that cannot be ignored." *Id.* at 978.

This is exactly the situation here. After bringing the first lawsuit in this Court, and losing on summary judgment and on all the applicable claim construction issues (*see* §IV.A.2, *supra*), Monsanto now seeks to evade these rulings and start anew in Missouri. Indeed, Monsanto actually belittles this Court's rulings, arguing (in Missouri) that this Court "never did a claim construction analysis of the term 'glyphosate resistance,'" that its claim constructions lacked "sufficient findings and reasoning to permit meaningful scrutiny" and that they were inconsistent with prior courts' orders. (D.I. 8:Exh. 8 at 6, 14 & n.6.) To the extent these arguments have any merit—which they do not—they should be addressed to this Court, not the Eastern District of

Missouri in an example of forum shopping. Such conduct is precisely the type contemplated by the Third Circuit in *EEOC*—conduct that should not be accepted by this Court.

Monsanto explains that it brought the latest GA21 litigation in Missouri not because of forum shopping, but because it has consistently brought suit in its home forum. (D.I. 8 at 10.) This assertion is simply false. While Monsanto's home forum may be Missouri, Monsanto intentionally filed the first action against Syngenta involving GA21 corn in this Court in 2004. (Exh. 1.)

Similarly, Monsanto filed the second action against Syngenta in Illinois, not because its subsidiary DeKalb was headquartered there, but instead because it wanted to take advantage of what it viewed as a favorable claim construction by that court concerning the Lundquist '880 patent—a claim construction it cited repeatedly to this Court after transfer and on appeal to the Federal Circuit. (*See, e.g.,* Exh. 9 at 11, 19.) According to an affidavit submitted by Monsanto in Missouri, at the time Monsanto initiated the Illinois action (through its subsidiary DeKalb), DeKalb was in the process of closing its Illinois facility and transferring all business records to Missouri. (Exh. 24 at ¶ 4.) Monsanto's "home forum" argument is neither persuasive nor a basis for ignoring the fact that it initiated the GA21 corn litigation in Delaware and should complete it here as well.

Indeed, this case is very similar to that presented to the Court in *Optical Recording*. There, this Court did not apply the first-filed rule or transfer the second-filed patent case out of Delaware because of the Court's familiarity with the technology and issues raised by the suit:

> Patent cases are generally recognized by litigants, attorneys and courts as complicated. Often times, the complexity of a patent case arises from the technical information that must be learned and understood by the court in order to render decisions throughout the litigation process. In this action and the New York lawsuit, the technology of the patents in suit is the same as the technology and patents involved in the *Time Warner* litigation recently concluded in this

district. This Court presided over the *Time Warner* litigation from its filing through trial and post-trial motions. The Court is familiar with the relevant technology and the patents. The Court's familiarity with the subject matter of the litigation will reduce the expenditure of judicial resources in the handling of this matter. This circumstance alone is sufficient, in the Court's view, to justify departure from the first-filed rule.

*Optical Recording Corp*, 803 F.Supp. at 973-74. As in *Optical Recording*, this Court's two-and-a-half year history with the Lundquist patents, understanding of the applicable technology, review of the prosecution history of the Lundquist patents, and overlapping claim constructions all favor this Court maintaining jurisdiction over the lawsuit. Monsanto's belated choice of its so-called "home forum," after having lost in this Court, does not provide a compelling reason to transfer this case in Missouri.

Furthermore, and contrary to Monsanto's allegations (D.I. 8 at 4 n.3), the GA21 litigation proceedings in this Court have not ended. Monsanto has appealed this Court's decision granting Syngenta summary judgment to the Federal Circuit. In the context of this appeal, Monsanto has argued that this Court's decision was contrary to law and fact and should be remanded for further proceedings. (Exh. 9 at 62.) This Court stayed the consolidated antitrust suit pending the outcome of the Federal Circuit appeal, accepting Monsanto's argument that there exists the real possibility of further proceedings in this Court on the Lundquist patents. Likewise, in Missouri, Monsanto has argued that it "will show at trial" that Syngenta wrongfully obtained GA21 corn in violation of license agreements between Monsanto and certain seed companies. (D.I. 8:Exh. 8 at 2-3.) Monsanto has raised the same contention in its tortious interference counterclaim currently pending before this Court. (Exh. 25 at 38, ¶¶ 76-80.) Monsanto also advanced this argument in its opposition to Syngenta's summary judgment motion for non-infringement of the Lundquist patents (Exh. 18 at 7, 24) and on appeal to the Federal Circuit (Exh. 9 at 40-42). Thus, to the extent this argument is at all relevant, it has been and will continue to be litigated in this Court.

Finally, and contrary to Monsanto's arguments (*see* D.I. 8 at 4 n.3), *Optical Recording* makes clear that the court with the most familiarity with the patents and technology should maintain jurisdiction, even if the prior case has concluded. 803 F.Supp. at 973-74. All of the above reasons plainly demonstrate that the interests of justice favor this Court maintaining jurisdiction over the GA21 litigation.

### 3. At the Very Least, this Court Should Stay Action on the Transfer Motion Pending the Missouri Court's Determination of Personal Jurisdiction

The first-filed rule should not be applied to a complaint that is fundamentally flawed. Although Monsanto has had years of discovery from the named plaintiffs in the antitrust and patent actions before this Court, Monsanto completely failed to even allege the most basic facts sufficient to establish jurisdiction over the named plaintiffs in Missouri. *See Genentech*, 998 F.2d at 938 (stating that a "sound reason" for departing from the first-filed rule is the "absence of jurisdiction over all necessary or desirable parties"). Accordingly, at the very least, this Court should stay resolution of Monsanto's motion to transfer until the Missouri court has the opportunity to address the personal jurisdiction and transfer issues before it.

This is exactly what this Court did in *Enzo Biochem Inc. v. Calgene Inc.*, No. 93-110-JJF, 1993 U.S. Dist. LEXIS 19502 (D. Del. May 18, 1993). There, Enzo argued that the first-filed action in California "is replete with error," including lack of personal jurisdiction over the named defendant, and that the Court should therefore not apply the first-filed rule. *Id.* at *5. In addressing this argument, this Court held that "[a]t a minimum, the first-field rule requires this Court to provide the California court an opportunity to make those initial determinations. . . . [U]ntil those determinations are made, the Court is persuaded that this case should be stayed." *Id.* at *6. Thus, although Syngenta submits that the Court should deny Monsanto's motion for

the reasons set forth above, it should at the very least stay resolution of the transfer motion until the Missouri court can assess the personal jurisdiction issues.

**B.    The Convenience of the Parties Does Not Favor Transfer to Missouri**

Monsanto argues that after two-and-a-half years of litigating the patent and antitrust cases in Delaware, where both Monsanto and DeKalb are incorporated and where Monsanto first filed suit based on Syngenta's GA21 corn product, it is now suddenly more "convenient" for the parties to change forums. This argument is baffling, particularly as none of the named Syngenta plaintiffs here are subject to personal jurisdiction in Missouri. Monsanto offers no explanation how it could possibly be more "convenient" for the named plaintiffs to litigate in Missouri, a forum where they are not subject to personal jurisdiction and where the exercise of jurisdiction over them would violate constitutional considerations of due process.

Furthermore, Monsanto is again wrong when it alleges that the relevant witnesses are in Missouri. Dr. Lundquist, an inventor on the '798 patent, resides in Minnesota. Mr. Walters, the other inventor on the '798 patent, resides in Connecticut. (Exh. 19.) Mr. Spencer, a DeKalb scientist who submitted a key declaration during the prosecution of the '798 patent, also resides in Connecticut. (Exh. 20.) In the prior case, Monsanto made Dr. Lundquist available in Minnesota, and Mr. Walters and Mr. Spencer available in Connecticut. (Exhs. 19-20, 26.)

Monsanto also lists witnesses residing in Missouri who are knowledgeable about Monsanto's current glyphosate resistance business, i.e. Bothe, Rinkenberger, Casale, and Leisure. (D.I. 8 at 9.) But Monsanto claims an effective filing date of the '798 patent in *1990*. Accordingly, Monsanto witnesses familiar with its current glyphosate business have no relevance to the invalidity or non-infringement of the '798 patent. At most, the roster of current Monsanto witnesses may have some relevance to damages, but Monsanto (incorporated in Delaware) has made no showing that it could not bring those witnesses (all Monsanto employees) to trial in

Delaware. *See CCA Global Partners, Inc. v. Yates Carpet, Inc.*, No. 4:06CV15JCH, 2006 WL 1045919, at *1-2 (E.D. Mo. Apr. 19, 2006)(noting that "party employee witnesses' 'presence can be obtained by that party'")(citation omitted); *see also Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, No. 06-505-SLR, 2006 WL 3755452, at *3 (D. Del. Dec. 19, 2006)("The travel expenses and inconveniences incurred for that purpose [trial in Delaware], by a Delaware defendant conducting a world-wide business, is not overly burdensome."); *Sherwood Medical Co. v. IVAC Medical Sys., Inc.*, No. 96-305 MMS, 1996 U.S. Dist. LEXIS, at *10 (D. Del. Nov. 25, 1996)(noting that employee witnesses are "available in any fora" to testify). Indeed, Bothe, Rinkenberger, and Leisure were on Monsanto's Delaware trial witness list. (Exh. 21.)

In contrast, Dr. Klein, an important non-party witness living in Delaware, is not under the control of Syngenta, and his potential unavailability at trial would greatly prejudice Syngenta. Dr. Klein conceived of a method for transforming corn years before Lundquist and Walters and diligently worked to obtain fertile transgenic corn. This fact is confirmed by the '798 patent itself, which specifically cites Klein's papers for the transformation method. (Exh. 5 at col. 11, lines 2-5, "The preferred procedure entails exactly the procedure of Klein et al. [publication citation omitted] except for doubling the stated optimum DNA concentration."). These facts can lead to invalidation of the '798 patent for anticipation under 35 U.S.C. § 102 and/or obviousness under § 103. Syngenta cannot compel Dr. Klein's attendance at trial. Contrary to Monsanto's allegations (D.I. 8 at 10 n.6), merely because Syngenta and DuPont—Dr. Klein's employer— have a joint venture for the purposes of development and licensing of corn and soybean does not mean that Syngenta has control over DuPont's employees. While Monsanto notes that Dr. Klein (and his counsel) spoke to Syngenta prior to his deposition, Monsanto fails to mention that Dr. Klein met with Syngenta (in Delaware) only after being subpoenaed. (Exhs. 13-14.) Dr. Klein

was defended by his own counsel at the deposition and there is no reason to assume he would voluntarily travel to Missouri to testify at trial. Furthermore, although Dr. Klein has been deposed, the jury should be permitted to judge Dr. Klein's credibility and the value of his contribution as opposed to that of the named inventors on the '798 patent live at trial. *See Sherwood Medical Co.*, 1996 U.S. Dist. LEXIS at \*10 ("As between geographic proximity of witnesses and being assured a court will hear live testimony, the latter in most instances will be the far more important consideration."). Syngenta's right to present this defense will be seriously compromised without calling Dr. Klein to testify at trial.

Monsanto also argues that Missouri is more convenient because "the primary location of additional Monsanto and DeKalb documents related to glyphosate resistant corn that might be produced in this case are located in St. Louis." (D.I. 8 at 10.) This fact clearly does not outweigh the interests of justice in keeping this case in a court that has experience with the patents, technology, and where personal jurisdiction is proper over all the parties. Moreover, despite the fact that Monsanto's principal place of business was Missouri when it filed the first GA21 suit against Syngenta, and document discovery was yet to commence, Monsanto still brought suit in Delaware. Clearly, the location of documents played no role in Monsanto's prior decision to file suit in this Court and should play no role now.

Finally, Monsanto argues that the transfer is proper because the named plaintiffs could have brought the suit in Missouri. (D.I. 8 at 4.) However, these plaintiffs maintain that there is no personal jurisdiction over them in Missouri and have filed papers to dismiss the Missouri action against them. (D.I. 8:Exh. 11.) The interests of justice do not favor transfer to a jurisdiction where Monsanto should not have sued any of the named plaintiffs, particularly where

this Court was the first to handle the GA21 patent infringement litigation and has jurisdiction over all the parties.

      **C.**    **This Court Should Deny Monsanto's Alternative Request for Dismissal of this Declaratory Judgment Action**

As an alternative to transfer, Monsanto argues that this Court should exercise its discretion and dismiss this action because of what it considers the first-filed action in Missouri. (D.I. 8 at 11.) As discussed in detail above, the prior action in this Court concerning Syngenta's GA21 corn and the Lundquist patents should be considered the first-filed action. As such, there is no basis to dismiss this action. This Court should not exercise its discretion to reward forum shopping.

**VI.**    **CONCLUSION**

For all the above reasons, Syngenta respectfully requests that this Court deny Monsanto's motion seeking transfer of this action to the Eastern District of Missouri.

                                        Respectfully submitted,

                                        John W. Shaw (No. 3362)
                                        Karen E. Keller (No. 4489)
                                        YOUNG CONAWAY STARGATT &
                                            TAYLOR, LLP
                                        The Brandywine Building, 17th Floor
                                        1000 West Street
                                        Wilmington, Delaware 19899-0391
                                        (302) 571-6600
                                        jshaw@ycst.com

Of counsel:

Michael J. Flibbert
Howard W. Levine
Sanya Sukduang
Jennifer A. Johnson
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C.  20001-4413
(202) 408-4000                    Attorneys for Plaintiffs

Dated: March 6, 2007

## CERTIFICATE OF SERVICE

I, John W. Shaw, hereby certify that on March 6, 2007, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> David E. Moore, Esquire
> Potter Anderson & Corroon LLP
> Hercules Plaza
> 1313 North Market Street
> Wilmington, DE 19899-0951

I further certify that on March 6, 2007, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

### BY FEDERAL EXPRESS

> Susan Knoll, Esquire
> Thomas A. Miller, Esquire
> Steven G. Spears, Esquire
> Howrey Simon Arnold & White, LLP
> 1111 Louisiana, 25th Floor
> Houston, TX  77002-5242

YOUNG CONAWAY STARGATT & TAYLOR, LLP

John W. Shaw (No. 3362)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600
jshaw@ycst.com

059155.1015

## CERTIFICATE OF SERVICE

I, Karen E. Keller, hereby certify that on March 13, 2007, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

David E. Moore, Esquire
Potter Anderson & Corroon LLP
Hercules Plaza
1313 North Market Street
Wilmington, DE 19899-0951

I further certify that on March 13, 2007, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

**BY FEDERAL EXPRESS**

Susan Knoll, Esquire
Thomas A. Miller, Esquire
Steven G. Spears, Esquire
Howrey Simon Arnold & White, LLP
1111 Louisiana, 25th Floor
Houston, TX 77002-5242

YOUNG CONAWAY STARGATT & TAYLOR, LLP

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
jshaw@ycst.com
kkeller@ycst.com